In re BLIXSETH, Christopher Conant appearing for Appellant and James Morrison appearing for Appellee. Mr. Conant, good morning. Would you like to reserve some time? Wow, that's fancy. Excuse me, Your Honor. I'm sorry. I've spent a week in this courtroom once. I'm familiar with it. I would like to reserve five minutes. In my experience, that turns into one minute, but I'd like to try for five. Okay, go ahead. May it please the Court. Christopher Conant for Appellant, Western Capital Partners. Today, Western Capital Partners is before the Court to appeal the order of the Bankruptcy Court of the District of Montana dismissing Western Capital's third-party complaint seeking to enforce a payment obligation against X-Patterns LLC and a guarantee of that payment obligation by Michael Sandoval. The primary error that Western Capital assigns on appeal is the Bankruptcy Court's analysis that Western Capital Partners was unable to enforce what we've called the letter agreement obligation, the payment obligation and letter agreement against X-Patterns and Michael Sandoval because Western Capital Partners had not established that or proven E-XXX conditions precedent to enforcement of those payment obligations. Can I ask you a preliminary question first of all? You know, one of the things that occurred to all of us is subject matter jurisdiction, given there's no trustee, no debtor in the courtroom here. But we noticed in the prior BAP decision there was a decision that there was subject matter jurisdiction. And my question is, has anything changed that would alter that conclusion? No, Your Honor. Nothing has changed in the interim. Okay. By subject matter jurisdiction, is this court asking about appellate jurisdiction or... I'm talking about related to... Related to. Right. There's been no further discussion about that, and I believe Western Capital and the parties have effectively consented to referral of the matter to the Bankruptcy Court for final decision. Okay, go ahead. Thank you. So the primary error we believe, we believe the Bankruptcy Court sort of missed the forest for the trees in looking at this, what I'll call the condition precedent paradigm. The Bankruptcy Court believed that Western Capital had not established that, either Blixith had established various conditions precedent to be able to enforce her right to enforce payment against X Patterns LLC and Michael Sandoval. In doing so, the Bankruptcy Court looked at several alleged breaches by Edra Blixith of what I'll call her executory obligations under the letter agreement. And so I want to briefly frame that discussion because the letter agreement really had, in our opinion, two components. There was the initial transaction whereby Edra Blixith exchanged value with X Patterns and Michael Sandoval by giving up her $10 million equity investment in X Patterns LLC. The exchange, the exchange of value for that was the consideration of Edra Blixith receiving a promissory note and payment obligation from X Patterns and Michael Sandoval in exchange for her giving up her $10 million equity investment. So we had that initial exchange of value. At that point, there was a liquidated debt obligation owing by X Patterns and Michael Sandoval to Edra Blixith. That debt obligation became evidenced by a promissory note executed by X Patterns as a maker, also signed by Mr. Sandoval as guarantor. Let me back you up on that. What evidence is there to say that to show that this agreement that was embodied in one document is really two separate agreements? Well, we have the letter agreement itself. Then we have the separate promissory note, which is the evidence of that, becomes the evidence of that debt. Okay. So you're looking basically strictly at the terms of the letter agreement. That's your basis for saying that these should be sort of separated and treated as independent obligations? I believe, yes, they're independent obligations. And the Calico v. Cavitech case indicates that when you have this type of transaction, where you have effectively a business divorce, there's an initial transaction where an exchange of value is given. One party gives up something in exchange for something else. In this case, Edra Blixith gave up her $10 million equity investment in exchange for this obligation to pay, evidenced by the promissory note. At that moment in time, there was a debt obligation. There was no further contractual condition proceeding to enforce payment of the debt. There may have been ongoing obligations between the parties. But that's no different, I submit to the Court, than a situation where you have a borrower-mortgage, I can never get it straight, mortgagee-mortgageor, mortgagee relationship. We have a borrower who executes a promissory note, promises to pay specific amounts on specific dates, as we have here. The lender may have various obligations ongoing over the life of the loan, for example, an escrow obligation. But the maker of the note doesn't get to withhold the payments that are outlined in the promissory note, that are due on specific dates. The maker doesn't get to say, hey, lender, I'm going to wait for the 30-year term of this note to go by to see if you've complied with all of your escrow obligations over the 30-year term. But what about breaches by the lender that occur before a payment is due? Because that's more analogous to this situation, right? Ms. Blixith allegedly, I guess admittedly, disclosed the letter agreement in breach of the letter agreement before, I think, the first payment on the note was due. Well, I think that there's some dispute about timing of when Ms. Blixith initially filed the suit and when the first payment was due. But let's even assume that, and I go back to the Calico case, because that's entirely, the case is so analogous to the situation here. We have a payment obligation. When there's a payment obligation, an ongoing executory obligation that may or may not become due, may or may not be breached, the case law says the payment obligation is independent of those ongoing executory obligations. So it's not a condition preceding an analysis, Your Honor. I agree that there is a point to their question, but the point goes more to the remedy for Mr. Sandoval in the case of, say, in this situation, if it's an independent obligation, which it is, because it's evidenced by promissory note with specific dates that the payment obligations are due, the remedy is a set-off. It's not to say that you can't enforce the letter agreement or the promissory note. If Mr. Sandoval, or X Patterns, has some damages flowing from that breach, they have to come prove, be able to quantify the amount of their damages flowing from that alleged breach. Here's a point where I'm confused on. You've got the Calico case, which says, I think, exactly what you said. If you have independent promises, the breach of one of them doesn't excuse obligation to perform on the other ones. But there's also a California appellate case that says you look at it, and if the breach is material, that excuses all performance obligations under the contract. So there seems to be two views of analyzing the situation where there's breaches on both sides. One looks at materiality. One looks at independence. And these two sets of cases don't even seem to cite or talk to each other. So you want me to choose, you want us to choose the Calico line of cases. Why should we do that? Why shouldn't we take the materiality line of cases? Yeah, I agree, Your Honor. Those line of cases do appear to be two ships passing in the night on this type of situation. But I don't know if it really is because the cases also said materiality cases say we don't, we loathe forfeiture. And if we can enforce an agreement or a relationship, contractual relationship between parties to avoid forfeiture, we should. And in this case, I think you have to. You have to go with the Calico line of cases because what happened here was Idra, and she gave $10 million of her money to Mr. Sandoval, to expats. They, Mr. Sandoval agrees to guarantee it no matter what may happen. But then afterwards, as Mr. Sandoval urges shortly thereafter, Idra gets nervous. He's going to walk away from the deal, so she sues him. So now Mr. Sandoval says, I'm out. Thank you for suing me, Ms. Blixit. Thank you for the $10 million you gave me, and you gave expaterns. We're going to go ahead and keep that, but because you decided to sue in Washington State Court to enforce your rights in a letter of agreement, I'll get to keep your money. And my debt obligation that I promised to pay no matter what may happen, now that's exonerated. That's a windfall for Mr. Sandoval. And in this case, we have a secured creditor like Western Capital Partners that lends money, takes a security interest in the debtor pre-petition. It's really taking away the security lender's money as well. So you have about five minutes left, but there's a question for Judge Hershey. Mr. Conant, if we were to follow the materiality line of cases, you say that those cases loathe forfeiture. But what deference do we owe to the trial court's determination of materiality? Isn't that essentially a fact of determination at the trial court? Well, two answers to that question, Your Honor. First of all, there's material breaches, but then there's a question of materiality of the breach. You can have a material term that is breached, but that's not really the focus. The focus is what is the materiality of the breach, meaning how do you quantify the value of that breach? So there's a material term that can be breached, but if it's a de minimis breach or if it's worth $100,000 in damages for Mr. Sandoval, meanwhile he still owes $5 million to Ms. Blixith, there's no proportionality there. So I think that's the legal error the bankruptcy court made for which there should be no deference. And the second part of your question is the bankruptcy court never found, as I view the opinion, never made a factual finding on the actual materiality of the breach. They just said it was a material. The bankruptcy court just found it was a breach of material term without quantifying it, without putting any sort of weight to the value of that breach. You're down to about three minutes, so you haven't quite got to your one minute you predicted. I'm learning. I will reserve at this point. Thank you. Mr. Morrison. I'm going to have to lower this because I'm not as tall as Mr. Conant. Good morning. May it please the Court. James Morrison here from Baker-Hostetler on behalf of Appellee Michael Sandoval. And I want to touch straight on the issue that Your Honor's raised, which is these divergent cases in California. Because the law in California is confusing and muddled, it seems. But there is a way to reconcile it. And primarily what it is, because even in the independent covenant cases that are addressing that topic, there's inconsistency in how they do it. There are some cases that basically say if there's payment of money and it's due over time, it can't be dependent with other terms. And then there's cases that are the complete opposite of that and find exactly that. The Brown v. Grimes case, for example. The way that all these cases seem to mesh is that what you look at is were the breached terms vital to the agreement? And if the breached terms were vital to the agreement, then it seems everyone largely in California is in agreement that if they're vital to the agreement, the breach is material, then that is when, and there's essentially a repudiation of the obligations by the party, then those in that situation, it excuses performance by the other party. So I just wanted to kind of start with that issue. Isn't that a way of saying that there are some cases where the breach is material and the promises are dependent? Exactly. And those are the clearest cases. I think that's right. But what do we do if we have a material breach of an independent covenant? So there's a case law that says if it's a material breach, it's not an independent covenant. And we cite that in our brief. Going back, we are here because WCP, like Sandoval, made the mistake of entering into a contract with Ezra Blixeth. And as we've seen time and time again, Ezra Blixeth does not honor contractual obligations. Blixeth was an equity investor in X Patterns and Offspring, which were co-founded by Mr. Sandoval. And in 2007, she threatened to unleash war, nuclear war, quote-unquote, on Mr. Sandoval if he didn't agree to sign this letter agreement that's at issue today, which gave Blixeth full ownership of Offspring. And Offspring at the time had a letter of commitment from the government for a $100 million contract. In a concession by Mr. Sandoval, he relinquished his ownership in Offspring and simultaneously agreed to convert Blixeth's X Patterns equity into debt, giving her a preference. There was no new money that ever changed hands under the letter agreement. The stated purpose of this letter agreement was to provide for a reasonable separation of Offsprings, X Patterns, and a TGO among the parties in a manner that allows for their continuation and resolves the issues between us. This is an important fact of this letter agreement because the purpose was not simply let's divide these companies between the two and go our merry way. The purpose was let's divide them in a manner that allows for their successful continuation. Unfortunately, Ms. Blixeth sabotaged X Patterns almost immediately after signing the letter agreement by, among other breaches, failing to pay a performance fee and breaching her confidentiality and nondisparagement obligations. Those confidentiality and nondisparagement obligations were not minor breaches. Blixeth publicly announced to the world that Sandoval and X Patterns had disputes with their primary investor leading to a settlement agreement. Simultaneously, Blixeth publicly disparaged Sandoval and X Patterns, accusing them of fraud in a baseless litigation which WCP at trial presented no evidence of the truth of Blixeth's accusations in that litigation. Unsurprisingly, after this happened, Blixeth had difficulty raising capital for X Patterns following Blixeth's breaches. Ultimately, X Patterns failed. Turning to the other legal issues, I want to start with the allegation that the bankruptcy court improperly admitted extrinsic evidence when considering the intent of the parties. There's been a lot of discussion that the bankruptcy court allowed for Sandoval to testify about his subjective intent, basically to try to change the terms of the letter agreement. But that's not what happened here. What happened was Sandoval primarily was testifying about what the purpose of these terms were and also what their importance was to him. This is not trying to change the terms of the letter agreement. It's explaining their context, their nature, and the surrounding circumstances of how the parties entered into that agreement. That is permissible parole evidence under California law, and the court did not abuse its discretion by admitting that extrinsic evidence. With regard to, and in particular, one example with regard to the no matter what may happen language, Sandoval testified that that language was put in for the purpose of ensuring that if the other mechanisms that were designed in the letter agreement failed to pay down the ex-patrons loan, such as that performance fee, the guarantee would still exist. It was not carte blanche for Idria Blixeth to just completely ignore all of her obligations and ignore all the post-closing things she had to do. WCP complains that Sandoval's testimony was self-serving and only told one side, but usually a party's testimony is self-serving, so I don't necessarily think that's a valid criticism. And WCP had the same opportunity as Sandoval to bring other witnesses in, and they failed to do so. Because the court properly admitted extrinsic evidence, the standard of review for whether the contract terms are dependent covenants or the contract is an entire agreement is not de novo. It's the clear air standard. And the Beckenjie Court didn't commit clear air here by determining that the letter agreement was an entire agreement. A contract isn't divisible where it was the intention of the parties to have an entire contract and the contract would not have been entered into except upon a clear understanding that the full object of the contract should be performed. Here the court correctly determined that Sandoval would not have entered into the letter agreement without the inclusion of the performance fee, the confidentiality, and the non-disparagement provisions. These were important terms to Sandoval that protected him from the quote-unquote nuclear war that Blixeff had threatened to unleash on him. Likewise, the performance fee was there to pay down this very ex-parent's obligation, which is why we're here. The primary cases, and we've heard a lot about Calaco and Starr and Verdeer from WCP, and those cases are distinguishable from the facts of Sandoval's case. This is an unusual, this is not your typical sale of a business, an arms-length sale. This was a settlement agreement. This was two parties that had a disagreement who decided to split up their companies amongst themselves, but to do so in a manner to allow them to continue. It's a different situation from those three cases. Also, none of those cases relied on extrinsic evidence, so the standard of review of the party's intent was not deferential to the trial court. None of those cases involved multiple breached terms of the agreement at issue here, which Sandoval would argue rises to the level of a repudiation of Blixeff's obligations. Also, in the case of Calaco, the breach was failure to forward payments. That is one breach that is easily addressed by a set-off. It's different here where you have confidentiality and non-disparagement that seriously harm the founder of a company trying to raise money. And finally, as the Court discussed, these cases, they say things that don't jive with other California cases. They make these broad generalizations that have largely been disputed by other California Court of Appeals decisions. And Sandoval's view is the Brown v. Grimes case is the more applicable to this case and largely refutes many of the statements that are made in the Calaco case. And it really stands for the proposition that if a party has repudiated its material obligations, it cannot still recover after that repudiation. Now, WCP argues that Sandoval didn't present evidence of his damages related to the confidentiality and non-disparagement obligations. But under California law, quantification of damages is not required to excuse a party's performance following a material breach. According to the Wilson case, which we cite in our brief, importance to the contract is what matters, not quantification of damages. And as we've said throughout our brief and here, these were important terms to Sandoval. And also, in addition, there were damages. There was a $15 million company that was valued at $15 million that ultimately went under following the damage to Mr. Sandoval's reputation. Now, WCP in its reply brief repeatedly stated that the bankruptcy court gave no weight to Sandoval's testimony, and that's just not true. The bankruptcy court never once said that it didn't give weight to Sandoval's testimony. Rather, the court referred to Sandoval's testimony as credible and plausible. And also, the court expressed in footnote 6 of the memorandum of decision that the court considered the weight to be given testimony even where not explicitly addressed in the decision. So just because the court didn't outright say it gave weight does not mean that it didn't give weight. And as far as the setoff here, the WCP just wants the court to grant $100,000 setoff and say everything is fine. The problem is, one, that $100,000 setoff is about 10 years too late. Blixeth was required to make that payment in 2007, I believe, and has not done so and didn't acknowledge that this money was due. Never acknowledged it, frankly, until WCP was in the courtroom at the trial saying we'll give this setoff and recognize this setoff. Likewise, the $100,000 setoff does not make Sandoval whole. It ignores all the other breaches that Blixeth did. So it's not really a remedy here. Likewise, the no matter what may happen language is not a waiver of Sandoval's defenses that Blixeth materially breached her obligations. But it's not language that evidences an unconditional guarantee. Wilson has used that very same language to describe an illusory contract. And California law applies a rule of strict construction to contractual pre-default waivers by guarantors. And likewise, any waiver of a guarantee's defense must be expressed and particular, and the language in the letter agreement does not meet that test. In addition, the loan guarantee and the loan were not these agreed equivalents. The loan is stated in paragraph 1, and it actually says in paragraph 1 what the consideration is for the loan. And tellingly, it does not include the guarantee as consideration in paragraph 1. Really, Sandoval's guarantee was given for the whole of the obligations in the letter agreement, and he testified that he would not have made that guarantee without all of the promises that were made in the letter agreement. So unless the court has any questions... Okay, thank you very much. Thank you. Mr. Conant, you've got three minutes. Thank you. I want to go back to the court's question about this dichotomy. I think the answer can be, there's an answer to the question by looking at this whether, first, the court should ask, is this a dependent or independent obligation? If it's an independent obligation, then a material breach of some other provision in the party's related agreement gives rights to a set-off. And I think that becomes apparent in the Calico case where it says the payment of money, quote, the payment of money cannot be made dependent on the performance by the other party of a condition, which, by the very terms of the contract, is not to be performed or may not be performed until after the date at which the money is to be paid. So I think that fits in this situation. But a negative covenant... I'm sorry. Isn't a negative covenant what's allegedly breached? And isn't the obligation to comply with a negative covenant, doesn't it exist for the life of the relationship? It's not a postponed obligation, right? It's an obligation that may or may never be... But it's a continuing obligation from the beginning not to do certain things. Sure. But if you look at the promissory note, so going on, we determined if a condition is an independent or dependent covenant, in this case, based on the express language of the contract. And I would, again, encourage the court to look at the promissory note because the promissory note says when the payments are due, Eidre, Michael Sandoval, expat and shall pay this amount on X date, period. If payment of that promissory note was dependent on some other obligation, you would see language in the promissory note which says, subject to Eidre performing all of her obligations, or so long as Eidre Blitzkrieg is not in default, expat and shall pay X amount on X date. Absent language that expressly makes the payment obligation dependent upon something else, I believe the court is obligated to construe this payment obligation as independent. And it just makes sense because you can't have, particularly when you're dealing with $10 million on either side of the equation, a breach of a material obligation that somewhere down the road gives the non-breaching party a windfall, which is what happened here. So are you saying that whenever there's a complicated transaction involving an agreement and there's a promissory note component to it, what we're supposed to do is look straight at the promissory note, see that it has terms that say pay this dollar amount at this time, and that's it, and then not look at the rest of the provisions of the agreement? I believe when you have an instrument evidencing a presently enforceable debt obligation, I believe that's what the court is obligated to do. Subject, of course, to the maker of the note or guarantor raising appropriate affirmative defenses, which is what should have happened here. Instead of just saying it's not enforceable, period. And that's my, that's our position on appeal, obviously. Okay. Thank you very much. Thank you. I want to thank Mr. Morrison, and I also want to thank your co-counsel. Sometimes this litigation can be quite acrimonious. They've been true professionals. Thank you, likewise. Very good. All right, thank you very much. The matter is submitted.
judges: Faris, Brand, Hercher